UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:18 CR 151 ERW (JMB) |
| ) | |
| KEVIN L. JOHNSON, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM, ORDER, REPORT, AND
RECOMMENDATION OF MAGISTRATE JUDGE**[1]

Currently before the Court are two motions filed on behalf of Defendant Kevin Johnson. First is a Motion to Suppress Evidence. (ECF No. 18) Second is a Motion for Discovery, which asks the Court to compel a fingerprint analysis of the handgun that is at issue in this case. (ECF No. 21) The government filed a response in opposition to Johnson's motion to suppress. (ECF No. 19) The undersigned held an evidentiary hearing on July 25, 2018. At the conclusion of that hearing, the parties advised the Court that they intended to work out Johnson's motion for discovery on their own, without any further consideration by the Court. On September 19, 2018, Johnson filed a motion to withdraw the discovery motion. (ECF No. 37) Accordingly, Johnson's Motion for Discovery is denied as moot. For the reasons outlined below, the undersigned recommends that the Court deny Johnson's Motion to Suppress Evidence.

**INTRODUCTION & BACKGROUND**

On February 22, 2018, the Grand Jury charged Johnson with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). The charge stemmed from an

---

[1] Pretrial matters have been referred to the undersigned United States Magistrate Judge, under 28 U.S.C. § 636(b).

incident in which firefighters and paramedics responded to a location where Johnson was found lying in a yard, substantially unresponsive.  A firefighter seized a gun that was immediately adjacent to Johnson and gave the gun to police officers at the scene.  Additional facts are outlined in greater detail below.

On July 25, 2018, the undersigned held an evidentiary hearing.  Johnson was present and represented by Assistant Federal Public Defender Felicia Jones.  The government was represented by Assistant United States Attorney Steven Muchnick.  The government presented the testimony of two witnesses, Officer Anthony Coll, with the City of St. Louis Metropolitan Police Department ("SLMPD"), and Firefighter Private Ruben Terry, with the City of St. Louis Fire Department.  Ms. Jones cross-examined each witness extensively.  The government offered two exhibits at the hearing, a probable cause statement (Gov't Exh. 1), and an at large arrest warrant (Gov't Exh. 2).

At the conclusion of the hearing, the parties requested permission to file post-hearing memoranda.  Those memoranda have been filed, a transcript of the evidentiary hearing has been prepared, and the matter is ready for decision.  (ECF Nos. 31, 35, 36)

Based on the testimony and evidence adduced at the evidentiary hearing, having had the opportunity to observe the demeanor and evaluate the credibility of the witnesses, and having fully considered the parties' arguments and written submissions, the undersigned makes the following findings of fact, conclusions of law, and recommendation.

### FINDINGS OF FACT

1.  Ruben Terry is a Firefighter Private with the City of St. Louis Fire Department with nineteen years of experience.  On January 11, 2018, he was assigned to Engine House 27, which is located in the area of Riverview and Partridge, in the City of St. Louis.

2.     During the evening hours of January 11, 2018, Engine House 27 received a call for a person down and in need of assistance in the area of 5700 Goodfellow, near the intersection of West Florissant.  Firefighter Terry and three others from Engine House 27 responded to that call in a firetruck.  Although an ambulance was dispatched at the same time as the firetruck, the ambulance arrived about seven to ten minutes after the firefighters.  When he arrived, Firefighter Terry observed a man, lying face down in the yard in front of a residence.  The man was later identified as Kevin Johnson, the defendant herein.  Firefighter Terry testified that Johnson was incoherent and unable to provide the responders with information.

3.     As Firefighter Terry and the others approached, the man was moving or rocking back and forth and Terry could see a gun which was positioned adjacent to Johnson, near his midsection.  Firefighter Terry retrieved the gun for safety purposes and held it in his pocket until police officers arrived.[2]  SLMPD Officers Anthony Coll and Kayla Devine arrived about ten minutes after the firefighters arrived.  Firefighter Terry testified that he gave the gun to Officer Devine.  Firefighter Terry testified that he seized the gun for safety purposes, not to assist law enforcement.

4.      After seizing the gun, the firefighters assisted Johnson in sitting upright until the ambulance arrived, and then assisted in loading him on a stretcher.

5.     Anthony Coll is an SLMPD patrolman with about three and one-half years of experience. Sometime after 6:00 p.m., on January 11, 2018, Officers Coll and Devine arrived at the 5700 block of Goodfellow in response to the call for a person down.  When Officers Coll and Devine arrived, Johnson was already on the stretcher and being loaded into an ambulance.  Johnson did not appear to be conscious to Officer Coll.  Officer Coll testified that he spoke with

---

[2] Firefighter Terry testified that his Captain, Chris Snyder, called the police to the scene.

3

Firefighter Terry and that Terry handed a fully loaded handgun to Officer Devine. Officer Devine then gave the gun to Officer Coll. Officer Coll conducted a serial number check to determine if the gun had been reported stolen or used in another crime; it had not.

6. Officer Coll testified that the paramedics took Johnson, by ambulance, to Barnes Hospital. Officers Coll and Devine followed the paramedics. Eventually, Officer Coll spoke with Johnson at the hospital. Officer Coll testified that Johnson was by then more coherent and provided his name and date of birth.

7. After receiving Johnson's name and date of birth, Officer Coll returned to his patrol car where he ran a computer inquiry. Based on the results of the computer inquiry, Officer Coll learned that Johnson had a federal felony conviction. At that point, based on the firearm recovered by Firefighter Terry and Johnson's criminal history, Officer Coll believed he had probable cause to arrest Johnson.

8. Officer Coll returned to the hospital and placed Johnson under arrest. Officer Coll advised Johnson of his rights using a Miranda warning card. Johnson acknowledged his rights but declined to make any statements.

9. Although he "arrested" Johnson, Officer Coll did not take Johnson into physical custody. Officer Coll testified that he spoke with a doctor who advised that Johnson would be admitted to the hospital for treatment due to cold exposure. After contacting a police supervisor, Officer Coll returned to patrol and elected to apply for an arrest warrant at a later date.

10. On January 24, 2018, Officer Coll submitted an affidavit in support of a complaint for a warrant to arrest Johnson for one count of unlawful possession of a firearm, a Class D felony, in violation of Mo.Rev.Stat. 571.070. (See Gov't Exh. 1) A judge in the City of St. Louis issued an "at large" arrest warrant for Johnson. (See Gov't Exh. 2)

4

11.     On February 22, 2018, a Grand Jury in this District returned a one-count Indictment, charging Johnson with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922.

## DISCUSSION, CONCLUSIONS OF LAW, & RECOMMENDATION

### Motion to Suppress

In his motion to suppress as originally filed, Johnson did not specifically argue for the suppression of any evidence or statements.  Rather, Johnson asked the Court to suppress his arrest because the gun was not seized from his person and there was no evidence associating him with the gun or any criminal activity connected to the gun.  In his post-hearing memorandum, Johnson is more specific and asks the Court to suppress the gun and evidence of his criminal history.  Johnson contends he was arrested without probable cause and that the police learned of his criminal history by questioning him in violation of his Fifth Amendment rights per Miranda.

The government contends that the gun was lawfully seized by the fire department—it was not acquired pursuant to any arrest or law enforcement activity.  Regarding Johnson's statements, the government argues that he was not in custody and, therefore, Miranda is inapplicable.

The undersigned first addresses the seizure of the firearm.  Next, the undersigned addresses Johnson's statements to Officer Coll.  Finally, the undersigned considers whether there was probable cause to arrest Johnson.

### A.     Seizure of the Firearm

Johnson asks the Court to suppress the gun seized by Firefighter Terry.  The government contends that there is no basis to suppress the gun because Firefighter Terry seized the gun pursuant to the community caretaker function.

Searches and seizures conducted without first obtaining a warrant are normally unreasonable under the Fourth Amendment. For purposes of deciding Johnson's motion to suppress, the Court finds that Firefighter Terry was a state officer subject to the Fourth Amendment.[3] But officers need not comply with the Fourth Amendment's warrant requirement when they are engaged in community caretaking activities. United States v. Quezada, 448 F.3d 1005, 1007 (8th Cir. 2006) (citing Cady v. Dombrowski, 413 U.S. 433, 441 (1973)). "Community caretaking functions are performed … to 'help those in danger.'" United States v. Smith, 820 F.3d 356, 360 (8th Cir. 2016) (quoting Quezada, 448 F.3d at 1007); see also United States v. Parks, -- F.3d --, 2018 WL 4117762 at *5 (8th Cir. Aug. 30, 2018). "A search or seizure under the community caretaking function is reasonable if the governmental interest in law enforcement's exercise of that function, based on specific and articulable facts, outweighs the individual's interest in freedom from government intrusion." Id. (citing United States v. Harris, 747 F.3d 1013, 1017 (8th Cir. 2014) (compiling cases that have applied the community caretaker doctrine to noninvestigatory seizures)).

In the instant case, Firefighter Terry was the first person to respond to the scene after receiving reports of an unresponsive person lying down in the 5700 block of Goodfellow. There can be no dispute that Firefighter Terry was acting as a first-responder to a reported medical emergency, that is, as a community caretaker dispatched to help a person reportedly in danger. Although Johnson takes issues with some of the details in Firefighter Terry's account of the events occurring on January 11, 2018, those issues are not relevant to the question of the constitutionality of the seizure of the firearm. Firefighter Terry testified that he observed the

---

[3] The same analysis would apply had police officers arrived first and observed and seized the firearm adjacent to Johnson.

firearm on the ground immediately next to Johnson and that he seized it for safety purposes, not for law enforcement purposes. The undersigned fully credits Firefighter Terry's testimony in this regard. Further, Johnson was semi-conscious and transported by ambulance to a local hospital for treatment. In such circumstances, Firefighter Terry quite reasonably seized the gun and provided it to Officer Coll, who eventually arrived at the scene.[4]

Accordingly, based on "specific and articulable facts," Firefighter Terry's interest in seizing the gun for community caretaking purposes outweighs any interest Johnson might have had to be "free from government intrusion." Smith, 820 F.3d at 360. There is no basis in law or fact to suppress the firearm seized by Firefighter Terry and provided to the police on January 11, 2018.

### B.    Motion to Suppress Statements

Paramedics transported Johnson by ambulance from the 5700 block of Goodfellow to a local hospital. Officer Coll responded to the hospital as well. After Johnson received some treatment, Officer Coll questioned him regarding basic pedigree information and learned Johnson's name and date of birth. Officer Coll used that information to conduct a computer inquiry, which indicated that Johnson was a convicted felon. Thereafter, Officer Coll placed Johnson under arrest, provided Miranda warnings, and attempted to interview Johnson. Johnson declined to make any statement. Thus, based on the record made at the evidentiary hearing, Johnson made statements to the police only once—while at the hospital, and limited to basic pedigree information. Johnson argues that his statements regarding his pedigree must be suppressed. The government contends otherwise.

Statements to law enforcement officers made during custodial interrogation are normally

---

[4] Johnson does not offer any reasonable alternative to Firefighter Terry's actions. It would be incredible and dangerous had Firefighter Terry simply left the pistol on the lawn.

subject to the procedures set out in Miranda v. Arizona, 384 U.S. 436, 477-78 (1966). United States v. LeBrun, 363 F.3d 715, 720 (8th Cir. 2004) (en banc). "Not every [statement] obtained absent the Miranda warnings is inadmissible, however, because 'police officers are not required to administer Miranda warnings to everyone whom they question.'" Id. (quoting Oregon v. Mathiason, 429 U.S. 492, 495 (1977)). Rather, Miranda warnings are required only when the suspect is in custody and subjected to interrogation. See id. When applicable, such warnings must be given before questioning begins. See Miranda, 384 U.S. at 444.

In this case, Miranda was not triggered because Johnson was not in custody when Officer Coll asked him for his name and date of birth. Johnson was transported to the hospital by paramedics, not the police. He was transported for medical reasons. He was not placed under formal or informal arrest. To the extent his freedom of movement may have been limited, it was due to medical concerns not law enforcement concerns. Accordingly, the undersigned finds that Johnson was not in custody when Officer Coll asked for identity information.

Furthermore, even if one concludes that Johnson was somehow experiencing the functional equivalent of a custodial arrest, there would be no basis to suppress Johnson's statements regarding his name and date of birth. Routine booking questions are reasonably related to police record-keeping and, therefore, are not subject to the cautions of Miranda. See Pennsylvania v. Muniz, 496 U.S. 582, 600-02 (1990); Lockett, 393 F.3d at 837 (citing Reyes, 908 F.2d at 287-88). When Officer Coll asked for pedigree information, he asked for only routine record-keeping information and was not required to first provide Miranda warnings.

Because Johnson was not in custody on January 11, 2018, and Officer Coll's questions were limited to soliciting routine record-keeping information, Johnson was not entitled to Miranda warnings. Accordingly, the undersigned recommends that the Court deny Johnson's

motion to suppress statements.

  **C.** **Probable Cause to Arrest Johnson**

All of Johnson's arguments build to his contention that his arrest was unlawful. First, as explained already, neither the gun nor Johnson's statements are subject to suppression. The gun was seized and the statements were made prior to Johnson's arrest. Thus, whether the police had probable cause to arrest him on January 11, 2018, is arguably irrelevant. Second, although Officer Coll "arrested" Johnson at the hospital, he did not take him into custody due to Johnson's condition. Rather, almost two weeks later, on January 24, 2018, Officer Coll applied for and obtained a complaint and at large warrant for Johnson. A Judge in the City of St. Louis issued the warrant. (See Gov't Exhs. 1 and 2) Third, a Grand Jury in this District charged Johnson with violating 18 U.S.C. § 922(g). Johnson has not moved to dismiss the Indictment, and based on the present record, there does not appear to be a basis in law or fact for such a motion. Thus, a State Judge and a Federal Grand Jury have each, independently, found probable cause to charge Johnson with a felony firearms charge related to the weapon seized on January 11, 2018. There is no remedy available for Johnson's contention that the police lacked probable cause to support his non-custodial arrest at the hospital on January 11, 2018. Nonetheless, the undersigned will consider the question of whether Officer Coll had probable cause for a warrantless arrest on January 11, 2018.

"Probable cause for an arrest exists if, at the moment the arrest was made, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that an offense has been committed." United States v. Rivera, 370 F.3d 730, 733 (8th Cir. 2004) (citation omitted). Probable cause is evaluated based "on the facts as they would have appeared to a reasonable

9

person in the position of the arresting officer." Id. "In making this determination, '[l]aw enforcement officers have substantial latitude in interpreting and drawing inferences from factual circumstances.'" United States v. Webster, 625 F.3d 439, 442 (8th Cir. 2010) (quoting United States v. Henderson, 613 F.3d 1177, 1181 (8th Cir. 2010)). "'Because probable cause requires only a probability or substantial chance of criminal activity, rather than an actual showing of criminal activity, the police need not have amassed enough evidence to justify a conviction prior to making a warrantless arrest.'" Id. (quoting United States v. Mendoza, 421 F.3d 663, 667 (8th Cir. 2005)). In this regard, "[o]fficers have a duty to conduct a reasonably thorough investigation prior to arresting a suspect, at least in the absence of exigent circumstances and so long as 'law enforcement would not [be] unduly hampered . . . if the agents . . . wait[] to obtain more facts before seeking to arrest.'" United States v. Evans, 851 F.3d 830, 835 (8th Cir. 2017) (alterations in original) (quoting United States v. Woolbright, 831 F.2d 1390, 1394 (8th Cir. 1987)). "An officer need not conduct a 'mini-trial' before making an arrest, but probable cause does not exist when a 'minimal further investigation' would have exonerated the suspect." Id. (citations omitted) (quoting Bigford v. Taylor, 834 F.2d 1213, 1219 (5th Cir. 1988)).

The facts of this case support a conclusion that Officer Coll acted prudently and reasonably, and possessed sufficient facts to support a finding of probable cause to arrest Johnson on January 11, 2018. First, Firefighter Terry observed the firearm in close proximity to Johnson who was lying unconscious or semi-conscious in a yard. There is no reason to doubt the veracity of Firefighter Terry's account of the significant details concerning this matter, and the circumstances described give rise to a reasonable inference that the gun had been in Johnson's possession before he passed out or collapsed in the yard. Firefighter Terry retrieved the gun for safety purposes and later gave it to police officers at the scene. Firefighter Terry told Officer

10

Coll that he found the gun adjacent to Johnson.  Officer Coll did not arrest Johnson at that point.  In fact, the record indicates that Officer Coll did not yet know Johnson's identity.  Paramedics transported Johnson to a hospital.  Officer Coll responded to that hospital.  Officer Coll did not arrest Johnson at this point either.  Instead, he asked for and received Johnson's name and date of birth.  With that pedigree information, Officer Coll conducted a computer database search and learned that Johnson had a prior felony conviction.  A person with a felony conviction may not lawfully possess a firearm under Missouri (and Federal) law.  Based on the totality of the circumstances, a reasonably prudent police officer in Officer Coll's situation would believe that Johnson had committed a crime.

Officer Coll testified that he did not "arrest" Johnson until after he learned Johnson's identity and that Johnson was a convicted felon.  The undersigned credits that testimony.  Although Johnson's arguments suggest that the gun could have belonged to someone else, this case does not present the type of situation in which there was plainly exculpatory information which Officer Coll disregarded.  See Evans, 851 F.3d at 835.  Rather, the record supports a conclusion that Officer Coll acted prudently, reasonably, and fairly before he concluded that Johnson had committed a felony offense.  Accordingly, the undersigned recommends that the Court find that probable cause supported Johnson's arrest on January 11, 2018.

## **CONCLUSION**

For the reasons set forth above, the undersigned finds that:  (1) the firearm was lawfully seized from the area adjacent to Johnson; (2) any statements Johnson made to Officer Coll were made while Johnson was not in custody and were in response to questions concerning routine pedigree information, not interrogation; and (3) there was probable cause to arrest Johnson on January 11, 2018, although Johnson was not physically taken into custody at that time.

11

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress [ECF No. 18], as supplemented and expanded by Defendant's post-hearing memorandum [ECF No. 35], be **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Withdraw Document [ECF No. 37] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Discovery [ECF No. 21] is **DENIED** as moot.

The parties are advised that they have fourteen (14) days in which to file written objections to the foregoing Memorandum, Order, Report and Recommendation, unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).  see also 28 U.S.C. § 636(b)(1)(A), Fed. R. Crim. P. 59(a).

Per the direction of the Honorable E. Richard Webber, Senior United States District Judge, the trial of this matter will be set at a future date.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this  20th   day of  September , 2018.